**CREDIT & FINANCE CORP. LTD.; Crescent Diversified Ltd.; Mike Felkay; Glenhaven Ltd.; Abraham Israeloff; Phyllis Israeloff; Clara E. Kellner; George A. Kellner; Carl B. Menges; Nat Miller Associates; Elizabeth B. Mott; Pimlico Associates; Polytechnic Organization Ltd.; Fred R. Nederlander; Elmer G. St. John, M. D.; Margaret W. St. John; Sogo Shosha Limited; Samuel M. Stayman and Alfred Rand, as Agents for Star Investors; Wendy Jesser Stowe; Robert Winthrop; Jerry Roland; and Donaldson, Lufkin & Jenrette, Inc., Plaintiffs,**

v.

**WARNER & SWASEY COMPANY; Ranco Incorporated; and Vorwerk & Co. (KG), Defendants.**

**No. 79 Civ. 4523.**

United States District Court,
S. D. New York.

Feb. 25, 1980.

[redacted]

[redacted]

[redacted]

Silverman & Harnes, New York City, for plaintiffs; Sidney B. Silverman, New York City, of counsel.

Simpson, Thacher & Bartlett, New York City, for defendant Ranco Inc.; Whitney North Seymour, Jr., John F. Cambria, New York City, of counsel.

Winthrop, Stimson, Putnam & Roberts, New York City, for defendant Vorwerk & Co.; Peter H. Kaminer, Sutton Keany, Robert J. Sussman, New York City, of counsel.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

This is an action for violations of the Securities and Exchange Act of 1934 ("1934 Act"). Plaintiffs are twenty corporations, associations and individuals who purchased on the New York Stock Exchange between July 12 and July 18, 1979 an aggregate of 52,100 shares of the common stock of Ranco, Inc. Defendants are Warner & Swasey Company, an Ohio corporation; Ranco, an Ohio corporation; and Vorwerk & Co. (KG), a German trading and holding company. With regard to defendant Ranco, plaintiffs allege violations of section 10(b) of the 1934

Act, as amended, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. Before us is Ranco's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted and failure to allege fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. For reasons set forth in this opinion, the motion is granted, with leave to replead.

### The Facts

According to plaintiffs' amended complaint, the facts underlying this action are as follows: On September 1, 1978, Warner & Swasey purchased 518,100 shares of Ranco common stock, constituting approximately 14% of Ranco's outstanding common stock. On September 5, Ranco filed a complaint in Ohio State court alleging that Warner & Swasey's acquisition of the Ranco stock violated Ohio's take-over statute. On September 16, Ranco and Warner & Swasey entered into an agreement ("September 16 Agreement") pursuant to which the Ohio action was dismissed and Warner & Swasey agreed not to buy or sell Ranco stock for a period of one year, but which agreement could be terminated by either party on thirty days written notice. On July 12, 1979 Warner & Swasey's president sent a letter ("July 12 letter") to the chairman of Ranco's Board of Directors in which Warner & Swasey (a) offered to purchase all of Ranco's outstanding common stock, and (b) gave the required thirty days notice of its intent to terminate the September 16 Agreement on August 11, 1979.[1] Simulta-

---

1. The body of the July 12 letter reads as follows:

"We at Warner & Swasey are disappointed that our informal discussions with Ranco's management during the last ten months have not led to any serious negotiations towards a business combination. Warner & Swasey has now concluded that a continuation of such informal discussions will not be productive.

"While we appreciate your introduction to us of a third party which through its agent offered to purchase our Ranco shares at a premium

over the current market, we have deemed that offer to be inadequate and have instead decided to make an offer to your Board to acquire all of Ranco's shares.

"Warner & Swasey wishes to make an offer to purchase any and all of the presently outstanding shares of Ranco's common stock at a cash price of $24.00 per share, with the approval of Ranco's Board of Directors. Accordingly, Warner & Swasey hereby requests that your Board consent to such an offer and recommend its acceptance by Ranco's shareholders. War-

neous with its sending of the July 12 letter to Ranco, Warner & Swasey filed it with the Securities and Exchange Commission as an amendment to the Form 13–D which it had filed in September 1978 pursuant to section 13(d)(1) of the 1934 Act, 15 U.S.C. § 78m(d)(1), and Rules 13d–1 and 13d–2 promulgated thereunder, 17 C.F.R. §§ 240.-13d–1, 13d–2. The contents of the July 12 letter were released to the public, causing the price of Ranco common stock to rise from $15¼ to $22¼. On July 12, Ranco issued a press release in which it acknowledged receipt of the July 12 letter, reported that the proposal would be considered by its Board of Directors at a meeting to be held on July 16, and expressed the opinion [vindicated by subsequent events] that there would be no hostile tender offer on the part of Warner & Swasey.[2] On July 16, Ranco issued another press release in which it reported that its Board of Directors had rejected Warner & Swasey's proposed offer as "inadequate and not in the best interests of the Company and its shareholders."[3] Between July 12 and July 18, plaintiffs, who are arbitrageurs, that is, speculators in securities of companies which are the possible targets of tender offers,[4] purchased a total of 52,100 shares of Ranco common stock. On August 1, Warner & Swasey entered into an agreement with Vorwerk to sell its entire Ranco holdings to Vorwerk, whereupon the price of Ranco common stock fell from $22 to $16½.

ner & Swasey's Board of Directors has authorized me to deliver this letter to you and, immediately upon receiving such consent and recommendation, to commence preparation for and to undertake such a transaction.

"Because it believes that the Agreement between Ranco and Warner & Swasey dated September 16, 1978, will no longer serve any useful purpose, Warner & Swasey wishes to terminate that Agreement as promptly as possible in order to regain its full freedom of action. Accordingly, Warner & Swasey hereby gives the required thirty days advance notice of its intention to terminate such Agreement, so that such Agreement will terminate on August 11, 1979.

"In view of the urgency and magnitude of this matter, I look forward to your timely response."

2. The July 12 press release reads as follows: "COLUMBUS, OHIO, JULY 12, 1979  .   .   . Ranco Incorporated reported that it received today a letter from The Warner & Swasey Company containing an unsolicited proposal requesting the Ranco Board of Directors to consent to the making of an offer by Warner & Swasey to purchase Ranco's outstanding stock at $24 per share.

"Ranco further reported that a meeting of its Board of Directors will be held Monday morning, July 16, 1979, to consider and evaluate the Warner & Swasey proposal and that the Board's conclusions with respect to it will be promptly announced following the meeting.

"A Ranco spokesman said that no hostile tender offer is anticipated because Warner & Swasey has been a major Ranco shareholder for ten months and throughout that period has consistently indicated it would not make an offer not deemed by Ranco's Board to be in the best interest of the company and its shareholders.

"In any event, at the present time Warner & Swasey could not make an unfriendly offer because of the restrictions imposed by the Ohio takeover law and an agreement between the two companies."

3. The July 16 press release reads as follows: "COLUMBUS, OHIO, JULY 16, 1979  .   .   . After careful study and evaluation, the Board of Directors of Ranco Incorporated, in consultation with Dillon, Read & Co. Inc., the Company's investment bankers, today unanimously rejected an unsolicited proposal from The Warner & Swasey Company to purchase Ranco's outstanding stock at $24 per share as inadequate and not in the best interests of the Company and its shareholders.

"In reaching their decision to reject the proposal, The Board thoroughly considered Ranco's operating plans, including the integration of its recently acquired subsidiary, Teccor Electronics, Inc., and the restructuring, now in progress, of Ranco's North American operations, and financial projections through 1982. In addition, the Board questioned the compatibility of the two companies and the credibility of Warner & Swasey's management in view of the agreement that has been in effect with Ranco since September 1978 and assurances received from Warner & Swasey's management during that time. The Ranco Directors determined that, in their judgment, the Warner & Swasey proposal fails to reflect Ranco's underlying values and that the interests of the Company and its shareholders would best be served by having it continue as an independent entity."

4. See generally Henry, *Activities of Arbitrageurs in Tender Offers*, 119 U.Pa.L.Rev. 466 (1971).

In their amended complaint, plaintiffs allege in essence: (a) they had made their purchases of Ranco stock in reliance upon the July 12 letter as filed with the Securities and Exchange Commission; (b) the July 12 letter "created the impression that if Ranco's board did not approve of the Offer," Warner & Swasey would make a hostile tender offer; (c) Ranco's July 12 press release was "materially false and misleading" in that it "failed to disclose" that Ranco had already "determined to oppose efforts by defendant [Warner & Swasey] to increase its ownership in Ranco" and instead stated that Ranco's Board of Directors would "consider and evaluate" the proposal; (d) the July 16 press release also was "materially false and misleading" in that it "augmented the impression, created by the July 12 [letter], which Ranco knew to be false, that defendant [Warner & Swasey] would make a hostile tender offer"; (e) "Defendant Ranco issued the false press releases in furtherance of its aim to frustrate defendant [Warner & Swasey's] efforts to acquire Ranco and to facilitate defendant [Warner & Swasey's] sale of its Ranco holdings"; (f) the news of Warner & Swasey's decision not to make a hostile tender offer for Ranco stock but instead sell its Ranco holdings to Vorwerk "took investors by surprise, and caused the price of Ranco stock to plummet . . ."; (g) Ranco and Vorwerk were somehow in collusion with each other in the alleged violations of the 1934 Act.

## The Procedural Setting

Plaintiffs initiated the instant action on August 27, 1979 by filing their original complaint. Defendants Ranco and Vorwerk responded by moving pursuant to Rule 12(b) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim upon which relief can be granted and failure to allege fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.[5] On December 4, 1979, plaintiffs filed an amended complaint dated November 7, 1979. Thereafter, defendant Ranco did not make a new motion specifically addressed to the amended complaint.[6] However, its counsel, Whitney North Seymour, Jr., Esq., did submit an affidavit in support of an application by Ranco to have both the original and amended complaints dismissed as "sham and false" in accordance with Rule 11 of the Federal Rules of Civil Procedure. In addition, defendant Ranco submitted a "Reply Memorandum in Support of its Motion to Dismiss and Strike the Original and Amended Complaints" in which it asserted:

"Ranco presses its motion to dismiss both the original and amended complaints for failure to state a cause of action as to it. Ranco has also expanded its motion to include an application to strike both the original and amended complaints under Rule 11 as sham because of the misstatement of the essential facts on which they purport to be based."

Consequently, at a hearing before us, we deemed Ranco's original Rule 12(b) motion to have been renewed, and it was argued as such by counsel for both Ranco and plaintiffs.

## Discussion

It is well established that "the securities laws do not distinguish between sophisticated and unsophisticated investors . . . ." *In re Scientific Control Corp. Securities Litigation* (S.D.N.Y.1976) 71 F.R.D. 491, 512. Specifically, "sophisticated investors, like all others, are entitled to the truth." *Stier v. Smith* (5th Cir. 1973) 473 F.2d 1205, 1207. See also *Wheat v. Hall* (5th Cir. 1976) 535 F.2d 874, 876; *Welch Foods, Inc. v. Goldman, Sachs & Co.* (S.D.N.Y.1974) 398 F.Supp. 1393, 1398–99; *Barthe v. Rizzo*

5. Rule 9(b) provides:

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

6. Defendant Vorwerk did make a new motion to dismiss the amended complaint pursuant to Rules 12(b)(6) and 9(b), which motion was granted from the bench at a hearing before us on December 7, 1979.

(S.D.N.Y.1974) 384 F.Supp. 1063, 1067; *Altschuler v. Cohen* (S.D.Tex.1979) 471 F.Supp. 1372, 1383; *Newman v. Shearson, Hammill & Co., Incorporated* (W.D.Tex.1974) 383 F.Supp. 265, 268.

■ However, it would seem self-evident that sophisticated arbitrageurs such as plaintiffs are not entitled to either a greater level or a different type of protection under the securities laws than that afforded to the average, far less sophisticated, investor. One cannot create a cause of action out of one's own cunning. The essence of plaintiffs' claim appears to be that because they were such sophisticated arbitrageurs, they assumed that defendant Ranco's perfectly truthful statements contained in its July 12 and July 16 press releases[7] were designed to convey a meaning diametrically opposite to their apparent meaning. The law does not sanction such convoluted reasoning.

A reasonable person reading Ranco's July 12 press release could not but conclude that if the Warner & Swasey proposal were to be rejected, no hostile tender offer would be forthcoming. Nothing in the July 16 press release could reasonably be interpreted as indicating otherwise. Furthermore, the July 12 press release is absolutely non-committal as to whether the Ranco Board of Directors would accept or reject Warner &

Swasey's proposal at its forthcoming July 16 meeting.

One would have to apply a peculiar "Alice in Wonderland" type of logic[8] to interpret the July 12 press release as somehow suggesting that the Warner & Swasey proposal would definitely or even possibly be accepted; or to conclude from either press release that Ranco at any relevant time anticipated a hostile tender offer by Warner & Swasey in the event that the proposal made in the July 12 letter[9] were to be rejected. Plaintiffs cannot now maintain their cause of action merely because, by the use of precisely such logic, they arrived at an erroneous interpretation of these two documents.

We need not now consider whether upon receipt of the July 12 letter Ranco was under a legal duty to issue a public announcement disclosing the relevant information. *Cf. Securities and Exchange Commission v. Texas Gulf Sulphur Co.* (2d Cir. 1968) 401 F.2d 833, *cert. denied sub nom. Coates v. Securities and Exchange Commission* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756; *Elkind v. Liggett & Myers, Inc.* (S.D. N.Y.1978) 472 F.Supp. 123. The fact is that it did so in its July 12 press release. However, we are certainly not aware of any statute, regulation or rule of law that could conceivably have required Ranco to go even further in this press release and speculate

7. See notes 2 and 3 *supra.*

8. "The King turned pale, and shut his notebook hastily. 'Consider your verdict,' he said to the jury, in a low trembling voice.

"'There's more evidence to come yet, please your Majesty,' said the White Rabbit, jumping up in a great hurry: 'this paper has just been picked up.'

"'What's in it?' said the Queen.

"'I haven't opened it yet,' said the White Rabbit; 'but it seems to be a letter, written by the prisoner to—to somebody.'

"'It must have been that,' said the King, 'unless it was written to nobody, which isn't usual, you know.'

"'Who is it directed to?' said one of the jurymen.

"'It isn't directed at all,' said the White Rabbit: 'in fact, there's nothing written on the *outside.*' He unfolded the paper as he spoke, and added 'It isn't a letter, after all: it's a set of verses.'

"'Are they in the prisoner's handwriting?' asked another of the jurymen.

"'No, they're not,' said the White Rabbit, 'and that's the queerest thing about it.' (The jury all looked puzzled.)

"'He must have imitated somebody else's hand.' said the King. (The jury all brightened up again.)

"'Please, your Majesty,' said the Knave, 'I didn't write it, and they ca'n't prove that I did: there's no name signed at the end.'

"'If you didn't sign it,' said the King, 'that only makes the matter worse. You *must* have meant some mischief, or else you'd have signed your name like an honest man.'

"There was a general clapping of hands at this: it was the first really clever thing the King had said that day."

"Alice's Evidence," Chapter XII of *Alice in Wonderland,* in THE COMPLETE WORKS OF LEWIS CARROLL (1976) at 125–26.

9. See n. 1 *supra.*

as to whether its Board of Directors would ultimately accept or reject Warner & Swasey's proposal at the July 16 meeting.

This brings us to the question whether or not the naked allegation that Ranco's July 12 press release "failed to disclose" Ranco's predetermination to reject the Warner & Swasey proposal is sufficient to state a claim in the absence of any allegation of fact suggesting the actual existence of such a predetermination.

█ It is by now beyond question that mere conclusory allegations of fraud are insufficient as a matter of law to state a claim under section 10(b) of the 1934 Act and Rule 10b–5. *Segal v. Gordon* (2d Cir. 1972) 467 F.2d 602, 607; *Shemtob v. Shearson, Hammill & Co.* (2d Cir. 1971) 448 F.2d 442, 444; *Darvin v. Bache Halsey Stuart Shields, Inc.* (S.D.N.Y.1979) 479 F.Supp. 460, 464; *Carroll v. Bear, Stearns & Co.* (S.D.N.Y.1976) 416 F.Supp. 998, 1000. While it is true that Rule 9(b) provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally", it has recently been established in this Circuit that "plaintiffs can be required to supply a factual basis for their conclusory allegations regarding [defendant's] knowledge." *Ross v. A. H. Robins Company, Inc.* (2d Cir. 1979) 607 F.2d 545, 558.

In the present case plaintiffs have failed to supply such a factual basis in either their original or their amended complaint. Their amended complaint suggests no reason to believe that at its July 16 meeting, the Ranco Board of Directors did not duly "consider and evaluate" the Warner & Swasey proposal in keeping with the intent expressed in the July 12 press release. On the contrary, the sole facts presented on this subject are those contained in the July 16 press release, according to which the proposal was rejected by the Ranco Board only after "careful study and evaluation" in consultation with Ranco's investment bankers.

We therefore conclude that plaintiffs' allegations are insufficient to state a claim.

Furthermore, we are mindful of the fact that plaintiffs have already once amended their complaint in response to two motions—one by defendant Ranco and the other by defendant Vorwerk—to dismiss pursuant to Rules 12(b)(6) and 9(b). "However, because we are hesitant to preclude the prosecution of a possibly meritorious claim because of defects in the pleadings, we believe that the plaintiffs should be afforded an additional, albeit final opportunity to conform the pleadings to Rule 9(b)." *Ross v. A. H. Robins Company, Inc., supra,* 607 F.2d at 547. Specifically, we believe that plaintiffs should have one additional opportunity to allege any "factual basis" for the contention that Ranco had already on July 12 predetermined what its Board of Directors would do at the July 16 meeting (which meeting would accordingly have amounted to a mere charade).

Consequently, defendant Ranco's motion to dismiss pursuant to Rules 12(b)(6) and 9(b) is granted with leave to plaintiffs to file a second amended complaint in accordance with this opinion within twenty days of the filing of this order.[10]

SO ORDERED.

---

**10.** Should the complaint be so amended, and should it subsequently develop that the added allegations were "sham and false", a renewal of defendant Ranco's Rule 11 motion might be in order.