CREDIT & FINANCE CORP. LTD.; Crescent Diversified Ltd.; Mike Felkay; Glenhaven Ltd., Abraham Israeloff; Phyllis Israeloff; Clara E. Kellner; George A. Kellner; Carl B. Menges; Nat Miller Associates; Elizabeth B. Mott; Pimlico Associates; Polytechnic Organisation Ltd.; Fred R. Nederlander; Elmer G. St. John, M.D.; Margaret W. St. John; Sogo Shosha Limited; Samuel M. Stayman and Alfred Rand, as Agents for Star Investors; Wendy Jesser Stowe; Robert Winthrop; Jerry Roland; and Donaldson, Lufkin & Jenrette, Inc., Plaintiffs-Appellants,

v.

WARNER & SWASEY COMPANY, and Vorwerk & Co. (KG), Defendants,

and

Ranco Incorporated, Defendant-Appellee.

Docket No. 80–7294.

United States Court of Appeals, Second Circuit.

Argued Oct. 31, 1980.

Decided Jan. 19, 1981.

**564**

Sidney B. Silverman, New York City (Silverman & Harnes, New York City), for plaintiffs-appellants.

Whitney North Seymour, Jr., New York City (Simpson, Thacher & Bartlett, New York City, John F. Cambria, New York City, of counsel), for defendant-appellee Ranco Incorporated.

Before FRIENDLY and OAKES, Circuit Judges, and OWEN, District Judge.[*]

FRIENDLY, Circuit Judge:

Plaintiffs-appellants in this action in the District Court for the Southern District of New York are 22 persons who purchased stock in defendant-appellee Ranco Incorporated (Ranco). The purchases occurred on July 13, July 17, and July 18, 1979, and were consequent upon two press releases by Ranco with respect to a tender offer for its stock by defendant Warner & Swasey Company (W&S). The amended complaint also named as defendants W&S and Vorwerk & Co. KG (Vorwerk). It claimed that the press releases (and in W&S' case also a letter to Ranco filed with the SEC) violated § 10(b) of the Securities Exchange Act and the Commission's Rule 10b–5. In an opinion reported in 486 F.Supp. 101 (D.C., 1980), Judge Knapp dismissed the complaint as against Ranco for failure to state a claim on which relief could be granted but gave plaintiffs " 'an additional albeit final oppor-

tunity to conform the pleadings to Rule 9(b)' " by alleging "any 'factual basis' for the contention that Ranco had already on July 12 predetermined what its Board of Directors would do at the July 16 meeting (which meeting would accordingly amount to a mere charade)." Plaintiffs elected to stand on their amended complaint and moved for entry of final judgment in favor of Ranco, their claim against Vorwerk having been previously dismissed. Since their claim against W&S remained undetermined, they sought a statement with respect to finality concerning Ranco authorized by F.R.Civ.P. 54(b). The court granted this over the opposition of Ranco's attorney who believed it might lead to a duplication of appeals after plaintiffs had had discovery against W&S. Plaintiffs have appealed as against Ranco.

The amended complaint alleges that W&S is an Ohio corporation engaged in producing and distributing industrial machinery and equipment; that Ranco is an Ohio corporation engaged in the design, manufacture and distribution of control devices and systems which regulate temperature, pressure, time, etc. Vorwerk is a German trading and holding company engaged in a variety of businesses; allegedly it "had close business ties" with Ranco.

The amended complaint went on to allege that on September 1, 1978, W&S purchased on the New York Stock Exchange some 14% of the stock of Ranco. W&S reported this on a Form 13–D Statement to the SEC. Following the traditional scenario Ranco filed a complaint in an Ohio state court alleging that the purchase violated certain provisions of the Ohio takeover statute. A temporary restraining order issued. Before it terminated, Ranco and W&S entered into a settlement agreement whereby Ranco dismissed the Ohio action on condition that W&S agreed not to buy or sell Ranco stock for a year; the settlement agreement was terminable on 30 days written notice. W&S filed an amendment to its Rule 13–D statement which annexed the settlement agreement as an exhibit and stated that it

[*] United States District Judge for the Southern District of New York, sitting by designation.

and Ranco planned to hold discussions concerning the relationship between the two companies and W&S' equity interest in Ranco.

Allegedly in an effort to thwart W&S' continued interest in a takeover, Ranco, on June 15, 1979, caused Vorwerk to buy 78,400 shares, about 2%, of Ranco's stock. Ranco introduced Vorwerk to W&S as a possible purchaser of W&S' Ranco shares but W&S was not satisfied with Vorwerk's offer.

On July 12, 1980, W&S filed another amendment to its 13–D statement. Annexed was a letter of the same date to Ranco. The letter began by expressing W&S' disappointment that its discussions with Ranco over the last ten months had "not led to any serious negotiations towards a business combination." After referring to the negotiations with Vorwerk, the letter announced W&S' intention to make an offer to purchase all of Ranco's stock at $24 per share if it received "the approval of Ranco's Board of Directors." However, the letter added that because W&S believed that the settlement agreement would no longer serve any useful purpose, W&S "wishes to terminate that Agreement as promptly as possible in order to regain its full freedom of action." Accordingly W&S gave the required 30 day notice so that the agreement would terminate on August 11, 1979.

Ranco on the same day issued a press release which reported the offer and said that its Board of Directors would meet on July 16, 1979, "to consider and evaluate the Warner & Swasey proposal" and that its

decision would be promptly announced following the meeting. However, the release continued:

A Ranco spokesman said that no hostile tender offer is anticipated because Warner & Swasey has been a major Ranco shareholder for ten months and throughout that period has consistently indicated it would not make an offer not deemed by Ranco's Board to be in the best interest of the company and its shareholders.

In any event, at the present time Warner & Swasey could not make an unfriendly offer because of the restrictions imposed by the Ohio takeover law and an agreement between the two companies.

Ranco common stock responded to the release by rising from $15¼ to $22¼; various plaintiffs bought it on July 13 at close to the latter figure.

On July 16 Ranco issued a second press release, which we quote in the margin.[1] The market was not much affected; several plaintiffs purchased Ranco stock on July 17 and two on July 18 at prices only slightly below those of July 13. However, on August 1 W&S entered into an agreement to sell its Ranco stock to Vorwerk at $26 per share. When this was announced, the market price of Ranco shares tumbled to $16½.

The amended complaint alleged that the July 12 W&S letter created the false impression that if Ranco's board did not approve of the tender offer, W&S would make a hostile tender offer; that Ranco's July 12 press release was materially false and misleading in that it created the impression that Ranco might accept W&S' friendly

---

1. COLUMBUS, OHIO, JULY 16, 1979 ... After careful study and evaluation, the Board of Directors of Ranco Incorporated, in consultation with Dillon, Read & Co., Inc., the Company's investment bankers, today unanimously rejected an unsolicited proposal from The Warner & Swasey Company to purchase Ranco's outstanding stock at $24 per share as inadequate and not in the best interests of the Company and its shareholders.

In reaching their decision to reject the proposal, the Board thoroughly considered Ranco's operating plans, including the integration of its recently acquired subsidiary, Teccor Electronics, Inc., and the restructuring,

now in progress, of Ranco's North American operations, and financial projections through 1982. In addition, the Board questioned the compatibility of the two companies and the credibility of Warner & Swasey's management in view of the agreement that has been in effect with Ranco since September 1978 and assurances received from Warner & Swasey's management during that time. The Ranco Directors determined that, in their judgment, the Warner & Swasey proposal fails to reflect Ranco's underlying values and that the interests of the Company and its shareholders would best be served by having it continue as an independent entity.

tender offer when in fact Ranco's board was determined to resist W&S' overture; that the July 16 press release was also false and misleading in suggesting the possibility of a hostile tender offer for Ranco stock by W&S by its questioning of the "credibility" of W&S' management "in view of the agreement that has been in effect since September 1978 and assurances received from Warner & Swasey's management during that time"; that both releases were materially false and misleading in their failure to disclose W&S' allegedly ongoing negotiations with Vorwerk; and that the whole episode was somehow contrived by Ranco and W&S to help W&S sell its Ranco stock to Vorwerk at a considerable profit. Finding that the press releases were truthful and that the bald allegation that Ranco did not seriously intend to evaluate W&S' proposal did not allege fraud with the "particularity" required by F.R.Civ.P. 9(b), the judge dismissed the amended complaint— although giving plaintiffs, as indicated, another chance to replead, which they rejected.

No useful purpose would be served in retracing this court's efforts to effect the necessary reconciliation between the requirement of F.R.Civ.P. 9(b) that "In all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity" and the provision in F.R. Civ.P. 8(a)(2) that a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," with the consequence that evidence need not be pleaded. It suffices to cite such well known cases as *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2 Cir. 1971); *Segal v. Gordon*, 467 F.2d 602, 607 (2 Cir. 1972); *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 378–80 (2 Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct.

1976, 44 L.Ed.2d 467 (1975); and *Denny v. Barber*, 576 F.2d 465 (2 Cir. 1978).

It doubtless follows that if plaintiffs had merely alleged generally that Ranco said it would carefully evaluate W&S' proposal when it had no intention of doing so, an allegation that could be made in virtually every rejected tender offer case, the complaint would have been properly dismissed. But here plaintiffs alleged a number of particulars from which one might reasonably infer that Ranco's July 12 press release was materially false and misleading. For example, Ranco had already resisted W&S' initial overtures in its September 5, 1978 Ohio suit against W&S. Ranco and W&S had also gone through 10 months of fruitless takeover negotiations. Also, Ranco had encouraged Vorwerk to take a position in Ranco stock and negotiate with W&S to purchase its shares. These factual allegations of extensive prior dealings between the parties give, at least at this preliminary stage, some support to the plaintiffs' allegation that Ranco had predetermined to oppose W&S' offer and that Ranco's July 16 board meeting would be a charade.[2]

A similar analysis applies to the statement in the July 16 release with respect to W&S' "credibility." A reader of this release could reasonably interpret it as suggesting that Ranco was indeed expecting a hostile tender offer, a prediction which Ranco had denied, although without apparent basis, see footnote 2, only four days earlier. Evidently the market thought the release was a harbinger of a hostile tender offer or of a white knight, since prices remained steady as distinguished from the sharp decline on August 1 when it became known that no tender offer, hostile or friendly, was going to be made. Actually the sentence is Janus-faced, with the "credi-

---

**2.** Of course, the July 12 press release also stated that "no hostile tender offer is anticipated," despite the fact that W&S' letter had given notice of termination of the settlement agreement "in order to regain its full freedom of action." This casts some doubt on the plaintiffs' contention that Ranco was intentionally creating a false impression that a friendly tender offer for its shares was in the offing; one would think that if Ranco's objective was to artificially raise the price of its shares, Ranco would not have discouraged speculation over a hostile offer. On the other hand, plaintiffs could argue that the quoted statement ran in the teeth of W&S' termination of the settlement agreement and thus was recklessly false and misleading.

bility" reference suggesting a hostile tender offer and the "assurances" phrase the contrary. Perhaps the peculiar language of the releases was mere inadvertence. But we think that the defendant has been given " 'fair notice of what the plaintiff's claim is and the grounds upon which it rests,' " *Denny v. Barber, supra,* 576 F.2d at 469, quoting *Shemtob, supra,* 448 F.2d at 444, and that the plaintiffs are entitled to some modest discovery to find out whether the facts support their allegations.

In reversing and remanding we direct the district judge to keep such discovery under tight control. Inquiry into W&S' negotiations with Ranco between September 1978 and August 1979, of why and how Vorwerk was brought into the picture, and of the reasons for the peculiar nature of the press releases should not be time consuming. Moreover, it may well be that after brief discovery Ranco will be in a position to move successfully for summary judgment. We hold only that on the special facts of this case dismissal under Rules 9(b) and 12(b)(6) was too severe a sanction with respect to a complaint which, though inartfully drawn, met the requirements of the Rules—although only by a hair's breadth.

Reversed and remanded.

OWEN, District Judge (dissenting):

Plaintiffs bought the stock of Ranco in anticipation of—or perhaps more properly phrased as "on the gamble that"—Warner & Swasey would effect a friendly takeover of Ranco or, failing that, would make a hostile tender offer directly to the shareholders. At no time, however, did either Ranco or W&S make any representation that there *would* be a hostile tender offer if W&S's friendly offer were rebuffed. There was no statement by either Ranco or W&S that a hostile tender offer was contemplated, and, in fact, one was never made. Indeed, the only comment of either party specifically addressed to that subject appears in Ranco's July 12th press release, and that statement was to the contrary, i. e., that in the event a friendly takeover were to be rejected by the Ranco board, "no

hostile tender offer is anticipated." In the face of Ranco's affirmative statement, which turned out to be true, that no hostile tender offer was in the offing, mere "impression[s]" which plaintiffs allege led them to a contrary conclusion cannot, in my view, give rise to a claim of fraudulent *misrepresentation* under the federal securities laws.

Next, plaintiffs contend they were defrauded by Ranco's statement that it would "consider and evaluate" W&S's offer. They attack the *bona fides* of the anticipated consideration and evaluation, alleging that Ranco had, in fact, predetermined to reject the offer. These allegations, judged in light of the specificity required by Fed.R. Civ.P. 9(b), are, in my view, wanting. In *Siegel v. Gordon,* 467 F.2d 602 (2d Cir. 1972), this Court stated:

It is a serious matter to charge a person with fraud and hence no one is permitted to do so unless he is in a position and is willing to put himself on record as to what the alleged fraud consists of specifically.

While it has sometimes been held to be sufficient specificity to set forth the attacked representation in the complaint and merely denominate it as false, I do not believe that the requirements of Rule 9(b) are met in this case by such a bare recital. Additional facts must be pleaded from which a reasonable inference of fraud would logically follow. *Ross v. A. H. Robins Company, Inc.,* 607 F.2d 545 (2d Cir. 1979).

Perhaps concerned with these pleading requirements, plaintiffs did recite the well-known antagonistic relationship between the parties, which was summarized in the W&S July 12 letter and the Ranco July 12 and 16 press releases. But while an awareness of this relationship would lead any reasonable investor to conclude that Ranco would approach W&S's offer negatively, and in all probability would not accept it, the pleaded facts do not go so far as to give rise to the necessary inference that Ranco's statement that it would "consider and evaluate" the offer was in fact false when made. Rule 9(b) requires more in this situ-

ation. *See Ross v. A. H. Robins Company, Inc., supra.*

In sum, from what plaintiffs have been able to allege—and plaintiffs have declined the offer of the court below to allege more—one can view them as simply knowledgeable speculators who took a risk and lost. I do not deem it appropriate to permit the plaintiffs to use an inadequately pleaded fraud action as the means to seek a basis to recover such a loss. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723 at 741, 95 S.Ct. 1917 at 1928, 44 L.Ed.2d 539 (1975); *Siegel v. Gordon, supra,* 467 F.2d at 607–8.

I would affirm.