Wilbur KLEIN and Sheldon Hoffman, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

COMPUTER DEVICES, INC., A.G. Becker Paribas Incorporated, Hoyt Ecker, Seaforth M. Lyle, Bruce Elmblad, Morton E. Goulder, David T. Riddiford, and Robert L. Warren, Jr., Defendants.

Joseph DAVELLA, Plaintiff,

v.

A.G. BECKER PARIBAS INCORPORATED, et al., Defendants.

Nos. 83 Civ. 6456 (GLG), 83 Civ. 8318 (GLG).

United States District Court, S.D. New York.

June 28, 1984.

Booth, Lipton & Lipton, New York City, for plaintiffs Klein and Hoffman; Jerome M. Leitner, James C. Olson, New York City, of counsel.

Pomerantz, Levy, Haudek, Block & Grossman, New York City, Berman, Devalerio & Pease, Boston, Mass., Sumner Woodrow, Boston, Mass., for plaintiff Davella; Stephen P. Hoffman, Laurence D. Paskowitz, New York City, of counsel.

Testa, Hurwitz & Thibeault, Boston, Mass., for defendants Ecker, Elmblad, Goulder, Riddiford, and Warren; Edmund C. Case, Martha S. Samuelson, Boston, Mass., of counsel.

Orans, Elsen & Lupert, New York City, for defendant Lyle; Sheldon H. Elsen, Lawrence M. Solan, New York City, of counsel.

Brown, Wood, Ivey, Mitchell & Petty, New York City, for defendant A.G. Becker Paribas Inc.; Henry F. Minnerop, Judith Welcom, New York City, Stuart J.M. Breslow, Boston, Mass., of counsel.

## OPINION

GOETTEL, District Judge.

These two securities fraud actions are presently before the Court on the defend-ants' motions to dismiss the complaints pursuant to Rule 9(b) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Both actions involve the same public offering of 1,000,000 shares of common stock issued on July 8, 1983, by Computer Devices, Inc. ("CDI"). The thrust of both actions is that the registration statement, particularly the prospectus accompanying the offering, was false and misleading.

In one action,[1] plaintiff Davella seeks damages against the officers and directors of CDI (the "individual defendants") and the lead underwriter, A.G. Becker Paribus, Inc. ("Becker"), under sections 11, 12(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77$l$(2), and 77$o$ (1982), on behalf of a class consisting of all persons who purchased common stock of CDI pursuant to the July 8, 1983, public offering. In the other action, plaintiffs Klein and Hoffman make the same claims against the same defendants, as well as a claim against Becker and individual defendant Seaforth M. Lyle[2] for alleged violations of section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) (1982), and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1983), promulgated thereunder.[3] These latter two plaintiffs seek recovery on behalf of a class consisting of all persons who purchased shares of CDI common stock between July 8, 1983, and August 17, 1983,[4] whether such persons purchased their shares from the underwriters who participated in the public offering, or in the open market.

### I. Section 11 Claims

Becker moves[5] to dismiss plaintiff Hoffman's section 11 claim,[6] pursuant to

---

1. This action, *Davella v. A.G. Becker Paribas, Inc.*, No. 83 Civ. 8318 (S.D.N.Y. filed Nov. 15, 1983) was reassigned from Judge Haight as being related to the other action, *Klein v. Computer Devices, Inc.*, No. 83 Civ. 6456 (S.D.N.Y. filed Aug. 31, 1983).

2. As alleged in the *Klein* complaint, Lyle was, at all pertinent times, a director of CDI, as well as the president and chief executive officer.

3. The *Klein* complaint also names CDI as a defendant. However, because CDI has filed for

Chapter 11 bankruptcy, prosecution of this action against CDI has been stayed pursuant to section 362 of the Bankruptcy Code, 11 U.S.C. § 362 (1982).

4. The plaintiffs do not explain why this latter date was chosen.

5. As indicated in oral argument, the individual defendants join Becker in making this motion.

6. None of the section 11 claims of the other plaintiffs is challenged by the defendants.

Rule 12(b)(6) of the Federal Rules of Civil Procedure. Becker argues that Hoffman has not alleged that he purchased the CDI stock pursuant to the July 8 public offering and that in the absence of such an averment, Hoffman has failed to state a claim under section 11. The Court agrees with the defendants for the following reasons.

Section 11(a) provides that:

In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, *any person acquiring such security* ... may, either at law or in equity, in any court of competent jurisdiction, sue [five categories of people named herein].

15 U.S.C. § 77k (1982) (emphasis added).

The phrase "any person acquiring such security," has been interpreted as limiting recovery to purchasers of shares issued and sold pursuant to the registration statement claimed to be defective. *Barnes v. Osofsky,* 373 F.2d 269 (2d Cir.1967); *Lorber v. Beebe,* 407 F.Supp. 279, 285–86 (S.D.N.Y.1975); *Colonial Realty Corp. v. Brunswick Corp.,* 257 F.Supp. 875 (S.D.N.Y.1966). Thus, persons who buy shares that are the direct subject of the defective registration statement, whether bought in the process of distribution or in the open market,[7] can bring a suit under section 11. *Barnes v. Osofsky, supra,* 373 F.2d 269; *Lorber v. Beebe, supra,* 407 F.Supp. at 286–87; *Colonial Realty Corp. v. Brunswick Corp., supra,* 257 F.Supp. 875; L. Loss, *Fundamentals of Securities Regula-* *tion* 1030 (1983). "It follows that a plaintiff in order to have a valid § 11 cause of action, must plead and prove that his stock was issued pursuant to the particular registration statement alleged to be defective.... [I]f he fails to do this, his § 11 claim must be dismissed." *Lorber v. Beebe, supra,* 407 F.Supp. at 286 (citation omitted).

A review of the *Klein* complaint[8] shows that Hoffman has not pleaded that the stock he purchased was issued pursuant to the allegedly defective prospectus. Hoffman states that on or about August 1, 1983, he purchased 3000 shares of CDI stock from Becker.[9] In the plaintiffs' papers, it is stated that Hoffman is unable at this point to state whether his CDI shares were among those issued on the July 8, 1983, offering. The reason given for this is that discovery, which would provide the answer, has been stayed pending decision on these motions. However, without an allegation that the shares were purchased pursuant to the allegedly defective prospectus, *i.e.,* that the shares were the direct subject of the prospectus, Hoffman cannot maintain an action under section 11. *See Barnes v. Osofsky, supra,* 373 F.2d at 273; *Lorber v. Beebe, supra,* 407 F.Supp. at 286. Thus, his section 11 claim must be dismissed.

## II. *Section 12(2) Claims*

### A. *Sellers*

The individual defendants and Becker separately move to dismiss the section 12(2) claims in both complaints, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon

---

7. "The open-market purchaser ... must be able to trace his particular securities to the registration statement when it covered additional securities of an outstanding class." L. Loss, *Fundamentals of Securities Regulation* 1038 n. 64 (1983); *see also Barnes v. Osofsky,* 373 F.2d 269, 273 (2d Cir.1967). If the purchaser bought identical securities already being traded on the open market, he must look elsewhere for relief. *Lorber v. Beebe,* 407 F.Supp. 279, 286 (S.D.N.Y.1975); *Wolfson v. Solomon,* 54 F.R.D. 584, 588 (S.D.N.Y.1972).

8. Throughout this opinion, the Court refers to Klein and Hoffman's second amended complaint as "the *Klein* complaint." With respect to the *Davella* action, the Court draws solely from Davella's amended complaint.

9. In the same complaint, Klein states that on or about July 8, 1983, he purchased 500 shares of CDI stock pursuant to the public offering.

which relief can be granted. The individual defendants argue that section 12(2) was enacted to create a cause of action in favor of a purchaser against his immediate seller and that, consequently, the complaints fail to state a cause of action against these defendants because there is no allegation that they sold securities to any plaintiff, or participated in any relevant buy-sell transaction. Likewise, Becker argues that section 12(2) requires privity between the buyer and seller and that the claims of plaintiffs Klein and Davella[10] must be dismissed, therefore, because they have not alleged that they purchased their shares of CDI stock from Becker. For the following reasons, the Court disagrees with the defendants.

Section 12(2) of the Securities Act provides that:

Any person who ... offers or sells a security ... by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading ... shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77l (1982).

This section, as compared with common law rescission, provides several advantages to the buyer. L. Loss, *supra*, at 1023. For example, "[s]ection 12(2) permits the buyer to pierce the privity requirement that normally prevails in common law rescission to the extent of reaching ... controlling persons ..., 'sellers' who are agents rather than principals, and others who participate in the sale more or less in the criminal aider and abettor sense." *Id.* at 1025 (footnote omitted). Thus, although section 12 seems to contemplate an action by a buyer against his immediate seller only, many circuits have allowed the buyer to sue others. *See, e.g., Securities and Exchange Commission v. Seaboard Corp.*, 677 F.2d 1289, 1294 (9th Cir.1982);[11] *Stokes v. Lokken*, 644 F.2d 779, 785 (8th Cir.1981);[12] *Junker v. Crory*, 650 F.2d 1349, 1360 (5th Cir.1981);[13] *Lawler v. Gilliam*, 569 F.2d 1283, 1287–88 (4th Cir.1978);[14] *Lanza v.*

---

**10.** Because Hoffman does allege that he purchased his shares from Becker, Becker does not move to dismiss his section 12(2) claim for lack of privity. However, as discussed *infra,* Becker does move to dismiss this claim on other grounds.

**11.** "The meaning of 'seller' for purposes of § 12 has been judicially expanded beyond the person who transfers title to include 'participants' in the transaction. The test is whether the injury to the plaintiff flowed directly and proximately from the actions of the defendant." *Securities and Exchange Commission v. Seaboard Corp.,* 677 F.2d 1289, 1294 (9th Cir.1982). The Ninth Circuit reached this conclusion even while noting that recent Supreme Court cases had cast some doubt on such a broad reading of the term "seller." *See id.* at 1294 n. 3.

**12.** [T]he conduct of the alleged aider or abettor must somehow bring him within the purview of § 12, which by its very language applies only to sellers.... [T]he term 'seller' for purposes of determining § 12 liability, is not limited to one who actually transfers title ... but *is* limited to one who is in privity with the purchaser or one whose participation in the buy-sell transaction is a substantial factor in causing the transaction to take place.
*Stokes v. Lokken,* 644 F.2d 779, 785 (8th Cir. 1981) (citations and footnote omitted).

**13.** "Only those in privity with the purchaser or those 'whose participation in the buy-sell transaction is a substantial factor in causing the transaction to take place' are classified as sellers under Section 12." *Junker v. Crory,* 650 F.2d 1349, 1360 (5th Cir.1981) (quoting *Pharo v. Smith,* 621 F.2d 656 (5th Cir.1980)).

**14.** The[ ] definitions include as sellers or offerors all persons who are a substantial factor in causing a purchaser to buy a security.... It is unnecessary to show that the offeror or seller owns the security, for the definition encompasses any significant participation in the sale on behalf of the actual owner. Liability may be imposed on any person who actively solicits an order, participates in the negotiations, or arranges the sale.
*Lawler v. Gilliam,* 569 F.2d 1283, 1287–88 (4th Cir.1978) (citations omitted).

*Drexel & Co.,* 479 F.2d 1277, 1298–99 (2d Cir.1973) (*en banc*).[15] *See generally* L. Loss, *supra,* at 1179–89. *But see Sanders v. John Nuveen & Co.,* 619 F.2d 1222, 1226 (7th Cir.1980), *cert. denied,* 450 U.S. 1005, 101 S.Ct. 1719, 68 L.Ed.2d 210 (1981);[16] *Collins v. Signetics Corp.,* 605 F.2d 110, 112–13 (3d Cir.1979).[17]

The controlling decision in this circuit is *Katz v. Amos Treat & Co.,* 411 F.2d 1046 (2d Cir.1969) (Friendly, J.). In *Katz,* a stock brokerage corporation along with its president and one of its customer's men, an attorney for the brokerage corporation and special counsel for the issuing corporation, and two officers of the issuing corporation were charged with violations of section 12 of the Securities Act. Initially, the court considered the question of section 12(1) liability. The court concluded that the stock brokerage corporation could be liable under section 12(1) if it actively solicited the plaintiff-purchaser's offers to buy. The court then found that the stock brokerage corporation, along with its president and customer's man, pressed the plaintiff to buy the stock involved and, thus, could be liable under section 12(1). *Id.* at 1053. The court further concluded that the attorney could be liable as a party to a solicitation, even though the attorney had not taken the initiative, since the evidence warranted the inference that the attorney had not simply answered the plaintiff's questions, but had placed the stock brokerage corporation "in a position to tackle the plaintiff for his money." *Id.* at 1053. The court, however, found that the two officers, one who had neither known of nor participated in the sale and the other who had merely signed the stock certificates, could not be liable under section 12(1) because that section was not "intended to embrace a corporate officer or director merely because he has knowledge of a sale of unregistered stock and plays such a minor role in facilitating it." *Id.* at 1053.

Then the court turned to the question of section 12(2) liability, and found it similarly present.

Except with respect to [the two officers], we think [the] plaintiff made a case sufficient for submission to the jury that statements approximating one or more of [the misrepresentations] were made or adopted by or on behalf of each of appellees, who knew or ought to have known of their falsity.

---

**15.** [S]ection 12(2) requires privity or, in the absence of privity, scienter. As Professor Folk has observed:

Under section 12(2), unlike section 11(a), liability does not result solely from signing a registration statement or occupying a status such as that of a director. Officers and directors may be directly liable under section 12(2) as "participants" in the sale, but such liability depends upon proof of the facts in each case and for each person, not merely upon a certain status.

*Lanza v. Drexel & Co.,* 479 F.2d 1277, 1298–99 (2d Cir.1973) (en banc) (quoting Folk, Civil Liabilities Under the Federal Securities Acts: The *Barchris* case, 55 Va.L.Rev. 1, 206 (1969)) (footnotes omitted).

**16.** "[T]he statute explicitly requires privity between plaintiff-purchaser and defendant-seller...." *Sanders v. John Nuveen & Co.,* 619 F.2d 1222, 1226 (7th Cir.1980), *cert. denied,* 450 U.S. 1005, 101 S.Ct. 1719, 68 L.Ed.2d 210 (1981). This statement, however, is mere dictum for the court was deciding whether a plaintiff-purchaser must receive the allegedly false prospectus or oral communication. In a later opinion, *Securi-* *ties and Exchange Commission v. Holschuh,* 694 F.2d 130, 141 n. 16 (7th Cir.1982), the same court, in an enforcement proceeding under section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, seemed to imply, again in dictum, that direct contact between a broker and the ultimate purchaser is not determinative of a broker's status as a seller in private rescission actions.

**17.** The district courts in this circuit ... have ruled that unless some special relationship exists between the issuer and the actual seller of the securities, such as control of the seller by the issuer, a purchaser not in privity with the issuer has no claim under § 12(2) against the issuer. We agree with this interpretation.

. . . .

... This section is designed as a vehicle for a purchaser to claim against his immediate seller.

*Collins v. Signetics Corp.,* 605 F.2d 110, 112–13 (3d Cir.1979) (footnote omitted). The court, however, did not hold that a defendant can never be found liable under section 12(2) for aiding and abetting the actual seller. *See id.* at 113–14.

*Id.* at 1055. This statement has since been interpreted as evidence of the Second Circuit's adoption of a liberal definition of "seller" under section 12(2). *See Katz v. David W. Katz & Co.,* [1983–84] Fed.Sec.L. Rep. (CCH) ¶ 99,669, at 97, 687 (S.D.N.Y. 1984); *Somerville v. Major Exploration, Inc.,* 576 F.Supp. 902, 913 (S.D.N.Y.1983); *Cronin v. Executive House Realty,* [1982] Fed.Sec.L.Rep. (CCH) ¶ 98,670, at 93,364 (S.D.N.Y.1982); *Tirone v. Calderone-Curran Ranches, Inc.,* [1978] Fed.Sec.L.Rep. (CCH) ¶ 96,480, at 93,772 (W.D.N.Y.1978); *Brick v. Dominion Mortgage & Realty Trust,* 442 F.Supp. 283, 292 (W.D.N.Y. 1977); *Lorber v. Beebe, supra,* 407 F.Supp. at 287–88; *In re Caesars Palace Securities Litigation,* 360 F.Supp. 366, 378–83 (S.D.N.Y.1973). *But see Mayer v. Oil Field Systems Corp.,* [1982–83] Fed.Sec.L. Rep. (CCH) ¶ 99,048, at 94,993–94 (S.D.N.Y. 1982); *Unicorn Field, Inc. v. Cannon Group, Inc.,* 60 F.R.D. 217, 222 (S.D.N.Y. 1973); *Benzoni v. Greve,* 54 F.R.D. 450, 454 (S.D.N.Y.1972). In conclusion, although the defendants strenuously argue otherwise, the controlling law in this circuit suggests that the plaintiffs can sue not only their immediate sellers under section 12(2) but also those who substantially participated in the transaction. Participation can include active participation in the transaction, or aiding and abetting, or conspiring with, the seller. *See Somerville v. Major Exploration, Inc., supra,* 576 F.Supp. at 913; *Tirone v. Calderone-Curran Ranchers, Inc., supra,* [1978] Fed.Sec.L.Rep. at 93,772; *Brick v. Dominion Mortgage & Realty Trust, supra,* 442 F.Supp. at 292; *Lorber v. Beebe, supra,* 407 F.Supp. at 287–88. *See generally In re Caesars Palace Securities Litigation, supra,* 360 F.Supp. at 378–83 (discussing why liability can be imposed on those who conspire or aid and abet in a violation of section 12(2)).

The complaints set forth allegations that the defendants participated and/or aided and abetted or conspired with each other in the preparation of the prospectus containing the misrepresentations. The complaints further allege that the defendants played an active and substantial role in promoting and providing assistance in the sale of the CDI stock to the plaintiffs and that these acts proximately caused or were a substantial factor in causing the sale of the stock to the plaintiffs. These allegations must be accepted as true and construed in favor of the plaintiffs. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Heit v. Weitzen,* 402 F.2d 909, 913 (2d Cir.1968), *cert. denied,* 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969). Unless it appears beyond doubt that the plaintiffs could not prove any set of facts in support of their claim which would entitle them to relief, the complaints should not be dismissed for failure to state a claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Thus, the plaintiffs' section 12(2) claims must be allowed to stand since they include allegations that the defendants substantially participated in the sale of CDI stock to the plaintiffs.[18]

### B. *"By Means Of"*

█ Becker moves to dismiss Hoffman's section 12(2) claim under Rule 12(b)(6), as well. Becker argues that Hoffman has failed to allege, as is required under section 12(2), that Becker sold the CDI stock to him by means of a false and misleading prospectus. Becker claims that Hoffman has not alleged that he purchased any shares pursuant to the prospectus or that he received or read the prospectus in connection with his purchase. Although the Court disagrees with defendant Becker's ground for dismissal, it finds an independent basis for granting the motion.

Looking first to Becker's contention, the Court initially notes that another advan-

**18.** The plaintiffs may find it difficult to prove the allegations. However, at this stage of the proceedings, the Court cannot find that the defendants did not participate in the sales and cannot as a matter of law say that it is impossi-

ble for the plaintiffs to prove their allegations. *See Lorber v. Beebe, supra,* 407 F.Supp. at 288; *In re Caesars Palace Securities Litigation,* 360 F.Supp. 366, 382 (S.D.N.Y.1973).

tage that section 12(2) (as compared with common law rescission) affords the buyer is that he does not have to prove reliance on the misstatement or omission of a material fact. L. Loss, *supra*, at 1023. *See also Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028, 1034 (2d Cir.1979) (absent an allegation by the defendant that the plaintiff knew of the falsity, plaintiff is not required to show that he relied on the defendant's misrepresentations to recover under section 12(2)); *Sanders v. John Nuveen & Co., supra*, 619 F.2d at 1225 ("It is well settled that § 12(2) imposes liability without regard to whether the buyer relied on the misrepresentation or omission."); *Demarco v. Edens*, 390 F.2d 836, 841 (2d Cir.1968) (there is no element of reliance in a section 12(2) claim). To require Hoffman to have received a prospectus before purchasing his shares would erroneously impose a reliance requirement. *Sanders v. John Nuveen & Co., supra*, 619 F.2d at 1225–26.

The "by means of" language in the statute has been clearly explained by the Seventh Circuit in its opinion, *Sanders v. John Nuveen & Co., supra*, 619 F.2d 1222, as follows:

> The statutory language, as amplified by the legislative history, indicates that a plaintiff need not prove that he ever received the misleading prospectus. The statute imposes liability in favor of a purchaser on any person who "[o]ffers or sells a security ... by means of a prospectus or oral communication" that is misleading. [T]he statute['s] ... terms do not require that the particular sale to an individual plaintiff be directly by means of the prospectus alleged to be misleading. The causal connection contemplated by the statute is revealed in the House Report on the bill that, after changes not relevant here, became the Securities Act of 1933. *See generally* Landis, *The Legislative History of the Securities Act of 1933*, 28 Geo.Wash.L. Rev. 29 (1959). Referring to §§ 11 and 12, the two sections imposing civil liabilities, the report declared that statements issued in connection with the sale of the securities,

> although they may never actually have been seen by the prospective purchaser, because of their wide dissemination, determine the market price of the security which in the last analysis reflects those manifold causes that are the impelling motive of the particular purchase. The connection between the statements made and the purchase of the security is clear, and, for this reason, it is the essence of fairness to insist upon the assumption of responsibility for the making of these statements.
>
> H.R.Rep. No. 85, 73d Cong., 1st Sess. 10 (1933), *reprinted at 2 Legislative History of the Securities Act of 1933 and Securities Exchange Act of 1934*, Item 18 (J. Ellenberger & E. Mahar, compilers, 1973)....
>
> ....
>
> Thus, it is enough that the seller sold by means of a misleading prospectus securities of which those purchased by the plaintiff were a part.

*Id.* at 1226–27 (footnote omitted); *see also* L. Loss, *supra*, at 1024 ("[The] legislative history ... argues against reading something like a reliance (or causation) requirement into the statutory reference to sale 'by means of' a misleading prospectus or oral communication.") (footnote omitted).

Thus, the allegation that the defendants issued a false and misleading prospectus, pursuant to which one million shares of CDI stock were issued and offered for sale to the public, is sufficient to satisfy the statute's requirement of a false or misleading prospectus "by means of" which the stock was sold, regardless of whether plaintiff received and read the prospectus. Thus, Becker's argument for dismissal is not persuasive.

■ There is, however, a valid reason for dismissing Hoffman's section 12(2) claim. He has not alleged that he purchased his shares pursuant to the public offering. To be able to recover under section 12(2), the plaintiff must prove that his shares were issued pursuant to the defec-

tive prospectus. *See Sanders v. John Nuveen & Co., supra,* 619 F.2d at 1227. In the absence of an allegation that the shares were the direct subject of the prospectus, Hoffman cannot maintain an action under section 12(2).[19] Therefore, his section 12(2) claim must be dismissed.

### III. *Section 10(b) Claim*

The *Klein* complaint alone asserts a claim under section 10(b) of the Exchange Act[20] and Rule 10b–5 promulgated thereunder.[21] Defendants Lyle and Becker move[22] to dismiss this claim on two grounds: (1) failure to plead fraud with particularity, pursuant to Fed.R.Civ.P. 9(b); and (2) failure to state a claim upon which relief can be granted, pursuant to Fed.R. Civ.P. 12(b)(6).

**19.** See the discussion *supra* on the section 11 claim.

**20.** Section 10(b) provides that:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
 * * * * * *
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
15 U.S.C. § 78j(b) (1982).

**21.** Rule 10b–5 states:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person,
in connection with the purchase or sale of any security.

### A. *Rule 9(b)*

A complaint alleging fraudulent violations of section 10(b) and Rule 10b–5 must satisfy the particularity requirement of Rule 9(b).[23] *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir.1982); *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Segal v. Gordon,* 467 F.2d 602, 607 (2d Cir. 1972). Rule 9(b) provides that "[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b). Therefore, mere conclusory allegations that the defendants' conduct was fraudulent is not enough. *Decker v. Massey-Ferguson, Ltd., supra,* 681 F.2d at 114; *Ross v. A.H. Robins Co., supra,* 607 F.2d at 557; *Segal v. Gordon, supra,* 467 F.2d at 607. Instead,

17 C.F.R. § 240.10b–5 (1983).

**22.** To be precise, only Becker moves to dismiss on the ground that Klein and Hoffman have failed to state a section 10(b) claim.

**23.** The rationale and aims behind this requirement are threefold. First, it gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests, thus enabling the defendant to prepare a defense. *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Pocahontas Supreme Coal Co. v. National Mines Corp.,* 90 F.R.D. 67, 73 (S.D.N.Y.1981); *Gross v. Diversified Mortgage Investors,* 431 F.Supp. 1080, 1087 (S.D.N.Y. 1977). Second, it protects the defendant from harm to his reputation or goodwill that might result from charges of fraud. *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir.1982); *Ross v. A.H. Robins Co., supra,* 607 F.2d at 557; *Pocahontas Supreme Coal Co. v. National Mines Corp., supra,* 90 F.R.D. at 73; *Gross v. Diversified Mortgage Investors, supra,* 431 F.Supp. at 1087; *see also Segal v. Gordon,* 467 F.2d 602, 607 (2d Cir.1972) (" 'It is a serious matter to charge a person with fraud and hence no one is permitted to do so unless he is in a position and is willing to put himself on record as to what the alleged fraud consists of specifically.' ") (quoting 1A W. Barron & A. Holtzoff, *Federal Practice and Procedure* § 302, at 215–16 (Wright rev. 1960)). Third, it minimizes the number of strike suits. *Decker v. Massey-Ferguson, Ltd., supra,* 681 F.2d at 114; *Ross v. A.H. Robins Co., supra,* 607 F.2d at 557; *Segal v. Gordon, supra,* 467 F.2d at 607; *Gross v. Diversified Mortgage Investors, supra,* 431 F.Supp. at 1087.

the complaint must allege with some specificity the act or statements constituting the fraud.[24] *Decker v. Massey-Ferguson, Ltd., supra,* 681 F.2d at 114; *Ross v. A.H. Robins Co., supra,* 607 F.2d at 557. "[T]his means that the pleader must state the time, place and content of the false misrepresentations, the fact misrepresented and what was obtained or given up as a consequence of the fraud." 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 9.03, at 9–20 through 9–24 (1984) (footnote omitted); *see also Pocahontas Supreme Coal v. National Mines Corp.,* 90 F.R.D. 67, 73 (S.D.N.Y. 1981) ("[Rule 9(b)] requires that in addition to pleading the time, place and contents of the allegedly fraudulent statements, the identity of the maker of the misrepresentation must be disclosed."); *Gross v. Diversified Mortgage Investors,* 431 F.Supp. 1080, 1087 (S.D.N.Y.1977) ("[T]here must be a specific identification of what statements were made in what reports and in what respects they were false, misleading or inaccurate or what omissions were made and why the statements made are believed to be misleading."), *aff'd sub nom. Duban v. Diversified Mortgage Investors,* 636 F.2d 1201 (2d Cir.1980).

The *Klein* complaint satisfies the particularity requirements of Rule 9(b).[25] First, the specific document alleged to have been false and misleading is identified.[26] Second, the manner in which the prospectus was misleading is adequately described.[27] Third, the maker of the misrepresentations is identified.[28] These allegations

**24.** Allegations based on information and belief generally do not satisfy Rule 9(b). *Segal v. Gordon, supra,* 467 F.2d at 608. However, pleading on information and belief is permissible as to matters peculiarly within the adverse party's knowledge and when accompanied by a statement of facts upon which the belief is founded. *Id.* at 608; *Gross v. Diversified Mortgage Investors, supra,* 431 F.Supp. at 1087; 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 9.03, at 9–26 through 9–27 (1984).

**25.** When reviewing the complaint, however, Rule 9(b) must be reconciled with Rule 8 of the Federal Rules of Civil Procedure which provides that the complaint should contain only "a short and plain statement of the claim," and with the consequence that Rule 9(b) does not require the pleading of detailed evidence. *See Credit & Finance Corp. v. Warner & Swasey Co.,* 638 F.2d 563, 566 (2d Cir.1981); *Ross v. A.H. Robins Co., supra,* 607 F.2d at 557 n. 20.

**26.** The document is the prospectus that accompanied the July 8, 1983, public offering of one million shares of common stock of CDI.

**27.** Paragraph 9 of the *Klein* complaint alleges various misrepresentations and omissions in the prospectus. For example, the complaint states that the prospectus failed to disclose that:

(a) CDI's losses for the second quarter of 1983, ending June 30, 1983, amounted to approximately $3,700,000;

(b) CDI was secretly considering a reduction in its workforce, contrary to statements in the prospectus;

(c) all or some of the defendants were planning to request the resignation of certain CDI vice presidents;

(d) orders and sales during the second quarter of 1983 had fallen and were far below projections;

(e) CDI had excess inventory that it was unable to sell; and

(f) CDI's primary product, the DOT portable computer, was substantially unmarketable with its 3½ inch disk drive format. (Paragraphs 9(h) through 9(1) expand further upon the reasons for the unmarketability of theDOT portable computer.)

**28.** The *Klein* complaint states that CDI made the untrue statements and omissions.

Paragraphs 31 and 32 of the *Klein* complaint state further that Lyle and Becker, through their participation in and review of the prospectus, conspired with or aided and abetted CDI in making the untrue statements and omissions of material facts with knowledge of the misstatements and omissions. It is noted that the Second Circuit has held that a general allegation such as this accompanied by specific allegations of the particular misrepresentations and omissions that have been made satisfies Rule 9(b):

The *scienter* allegations with respect to the underwriter defendants are primarily in paragraph 81:

The Underwriter Defendants aided and abetted and joined in the conspiracy by circulating a prospectus which they knew, or should have known, contained material misrepresentations of facts and material omissions.

If this stood alone, it might well run afoul of Fed.R.Civ.P. 9(b). However, paragraph 52 of the complaint alleged five major misrepresentations and omissions in the prospectus, which we quote in the margin; these gave the defendants sufficient notice of what they must meet, and the Rule itself says that knowledge "may be averred generally."

give the defendants fair notice of the plaintiffs' claims and identify adequately which statements were misleading and why. From this, the defendants will be able to answer the complaint and to prepare a defense. Accordingly, the Court finds the Rule 9(b) portion of the defendants' motion to dismiss is unpersuasive.

### B. *Failure to State a Claim*

#### 1. *Aiding and Abetting*

Becker also argues that the *Klein* complaint fails to allege any of the essential elements of an aiding and abetting claim and that, therefore, the section 10(b) claim must be dismissed. The Court disagrees for the following reasons.

 The elements of aiding and abetting liability are well settled. They are: (1) the existence of a securities law violation by a primary wrongdoer; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the violation.[29] *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir.1983); *IIT, An International Investment Trust v. Cornfeld*, 619 F.2d 909, 922 (2d Cir.1980). The *Klein* complaint adequately alleges these elements.

First, the existence of a primary violation of section 10(b) is alleged. The *Klein* complaint alleges that CDI knowingly made misstatements and omissions of material facts in the prospectus and intended the prospective purchasers to rely on these misrepresentations. It is also alleges that the plaintiffs were thereby defrauded when they relied on the prospectus and were induced to purchase shares of CDI stock.[30]

Second, scienter on the part of Becker has been sufficiently pled. The *Klein* complaint alleges that Becker aided and abetted CDI in making the misrepresentations, either with knowledge of their misleading nature or in reckless disregard of their truth or falsity.[31] As a matter of pleading, nothing more is required because under Rule 9(b) the element of knowledge may be averred generally.[32] *See IIT v. Cornfeld, supra,* 619 F.2d at 924.

Finally, substantial assistance by Becker in the violation is adequately alleged. The *Klein* complaint alleges that Becker participated in the preparation and review of the allegedly defective prospectus and that Becker actively promoted the sale of shares to the plaintiffs by, for example, orchestrating the entire transaction, placing advertisements and processing purchase orders. This situation is analogous to that found in *IIT v. Cornfeld, supra,* 619 F.2d at 925, where the court held that the participation of underwriter defendants in a eu-

---

*IIT, An International Investment Trust v. Cornfeld,* 619 F.2d 909, 923–24 (2d Cir.1980) (footnote omitted).

**29.** [C]onclusory allegations that defendant aided and abetted or conspired are not enough.... The complaint must charge a violation of section 10(b) by the Company, knowledge of such violations by the [defendant], and his substantial assistance in the accomplishment of the violation ... or else the existence of an agreement between the [defendant] and one or more others to accomplish the wrongful purpose of violating section 10(b).
*Decker v. Massey Ferguson, Ltd., supra,* 681 F.2d at 119 (citations omitted).

**30.** As discussed earlier, these allegations are sufficient to satisfy Fed.R.Civ.P. 9(b).

**31.** Since the *Klein* complaint is sufficient under the knowledge allegations, the Court need not decide whether it is sufficient under the allega-

tions of recklessness. *See IIT v. Cornfeld, supra,* 619 F.2d at 924; *see also Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983) (explaining the requisite allegations of recklessness).

Whether a reckless disregard of the facts is sufficient to satisfy the requirement of knowledge has not yet been decided by the Supreme Court.... However, in the Second Circuit, if the alleged aider and abettor owes a fiduciary duty to the plaintiff, recklessness is enough.... If there is no fiduciary duty, the "scienter" requirement scales upward—the assistance rendered must be knowing and substantial.
*Id.* at 91 (citations omitted).

**32.** "One may indeed doubt whether plaintiffs will be able to demonstrate actual knowledge on the part of [the defendant] at trial, but in the absence of a sufficiently supported motion for summary judgment on this subject ... they are entitled to an opportunity to do this." *IIT v. Cornfeld, supra,* 619 F.2d at 924.

rodollar offering was substantial assistance.

> [T]he underwriter defendants did ... associate themselves with the venture, participated in it as something they wished to bring about, and sought by their action to make it succeed. Moreover, we must consider the issue in the light of the allegation that these three underwriters actually knew of the specified falsities in the prospectus. If the underwriter defendants had such knowledge and had blown the whistle, the entire underwriting might have collapsed.

*Id.* at 925.

In conclusion, after considering the three requirements of aiding and abetting liability together, *IIT v. Cornfeld, supra,* 619 F.2d at 922, the Court is satisfied that the *Klein* complaint sets forth a section 10(b) claim that satisfies all three requirements.

### 2. *Reliance*

▆▆▆▆ Becker also argues that Hoffman does not allege a nexus between the prospectus and his purchase. Specifically, Becker points to the absence of any allegation that it provided Hoffman with a prospectus. Thus, argues Becker, Hoffman fails to meet the "in connection with" requirement of section 10(b) and, therefore, Hoffman's section 10(b) claim must be dismissed. The Court, however, disagrees with Becker.

The function of requiring a plaintiff to show reliance in a section 10(b) action is to permit only those injured by the fraud to sue. *Panzirer v. Wolf,* 663 F.2d 365, 367 (2d Cir.1981), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982). "[H]owever, reliance is presumed once the materiality of an omission is established, ... or [if] the material misrepresentation affected the price of stock traded on the open market." [33] *Ross v. A.H. Robins Co., supra,* 607 F.2d at 553.

In this case it is alleged that CDI, Becker, and Lyle intended that prospective purchasers, brokers, investment advisors, and the market, in general, would rely on the misstatements and omissions in the prospectus; that the plaintiffs either directly or indirectly relied on the prospectus in deciding to purchase shares of CDI; and that the plaintiffs were induced to purchase shares of CDI stock at prices which were significantly higher than the true value of such stock. Thus, overall, plaintiff Hoffman is alleging a fraud on the market.[34] Although he does not explicitly state that he relied on the integrity of the market,[35] the allegations are sufficient to withstand a motion to dismiss because material fraud on the market and a chain of causation between the fraud and the injury have

---

**33.** The reasons for the presumption of reliance in these two situations have been explained by the Second Circuit in its opinion, *Panzirer v. Wolf,* 663 F.2d 365 (2d Cir.1981), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982), as follows:

> Where ... the fraud consists of a failure to disclose, the difficult nature of plaintiff's claim—that if there had been disclosure, plaintiff would not have been harmed—has led the Supreme Court to hold that if the omission is material, reliance upon the omission will be presumed. *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–53 [92 S.Ct. 1456, 1472, 31 L.Ed.2d 741] (1972). Proving reliance is necessarily difficult where the fraud has affected the market and damaged the plaintiff only through its effect on the market. Relying on *Affiliated Ute,* this and other circuits do not require direct reliance where the fraud affects the market, on the ground that the investor relies generally on

the supposition that the market price is validly set and that no unsuspected fraud has affected the price.... As in *Affiliated Ute, Blackie* [*v. Barrack,* 524 F.2d 891, 906–07 (9th Cir.1975), *cert. denied,* 429 U.S. 816 [97 S.Ct. 57, 50 L.Ed.2d 75] (1976) ] held that the materiality of a fraud creates a presumption of reliance through its presumed effect on the market.

*Id.* at 368 (citations omitted).

**34.** The fraud on the market lies in the intent to have purchasers, brokers, investment advisors and the market in general rely on the allegedly false prospectus.

**35.** "[I]t is hard to imagine that there is a buyer or seller who does not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?" *Schlanger v. Four-Phase Systems, Inc.,* 555 F.Supp. 535, 538 (S.D.N.Y.1982).

**282**

been alleged.[36] In addition, Hoffman is claiming fraud through material omissions and reliance is presumed when such omissions are material, as is the case here.

For all of the above reasons, Becker's motion to dismiss Hoffman's section 10(b) claim must be denied.

### IV. *Conclusion*

The defendants' motions to dismiss with respect to plaintiff Hoffman's section 11 and section 12(2) claims are granted. In all other respects, the motions are denied.

SO ORDERED.

---

**36.** The causal connection is that the plaintiffs relied directly or indirectly on the prospectus in deciding to purchase shares which were overvalued. Although the validity of the chain of causation will be tested at trial, upon a motion to dismiss, validity of the chain must be presumed. *See Panzirer v. Wolf, supra,* 663 F.2d at 367.