**Wilbur KLEIN and Sheldon Hoffman, on behalf of themselves and all others similarly situated, Plaintiffs,**

**v.**

**COMPUTER DEVICES, INC., A.G. Becker Paribas Incorporated, Hoyt Ecker, Seaforth M. Lyle, Bruce Elmblad, Morton E. Goulder, David T. Riddiford, and Robert L. Warren, Jr., Defendants.**

**Joseph DAVELLA, Plaintiff,**

**v.**

**A.G. BECKER PARIBAS INCORPORATED, et al., Defendants.**

**Nos. 83 Civ. 6456 (GLG), 83 Civ. 8318 (GLG).**

United States District Court, S.D. New York.

Feb. 21, 1985.

Booth, Lipton & Lipton, New York City, for plaintiffs Klein and Hoffman; Philip H. Kalban, New York City, of counsel.

Pomerantz, Levy, Haudek, Block & Grossman, New York City, Berman, Devalerio & Pease, Sumner Woodrow, Boston, Mass., for plaintiff Davella; Stephen P.

Hoffman, Lawrence D. Paskowitz, New York City, of counsel.

Brown, Wood, Ivey, Mitchell & Petty, New York City, for defendant A.G. Becker Paribas Inc.; Henry F. Minnerop, Judith Welcom, Stuart J.M. Breslow, New York City, of counsel, Louis Loss, New York City, of special counsel.

## OPINION

GOETTEL, District Judge:

On July 8, 1983, there was a public offering of one million shares of common stock of Computer Devices, Inc., at $11.25 per share. The value of these shares declined and Computer Devices, Inc., subsequently filed for bankruptcy. Purchasers of the stock filed complaints [1] alleging violations of the securities laws by the officers and directors of Computer Devices, Inc., and by Becker Paribas Incorporated ("Becker"),[2] the lead underwriter of the public offering.[3] The defendants moved to dismiss the complaints on various grounds. The motions were granted in part and denied in part. *See Klein v. Computer Devices,*

1. There are two actions before this Court: *Klein v. Computer Devices, Inc.,* No. 83 Civ. 6456 (S.D. N.Y. filed Aug. 31, 1983), and *Davella v. A.G. Becker Paribas, Inc.,* No. 83 Civ. 8318 (S.D.N.Y. filed Nov. 15, 1983).

   Throughout this opinion, the Court refers to the second amended complaint in the *Klein* action as "the *Klein* complaint" and to the amended complaint in the *Davella* action as "the *Davella* complaint."

2. Effective June 1, 1984, Becker changed its name from A.G. Becker Paribas Incorporated to Becker Paribas Incorporated.

3. The plaintiffs in the *Klein* action had also sued Computer Devices, Inc. They later moved to dismiss the action against Computer Devices, Inc., and the motion was granted without opposition.

4. The plaintiffs argue that this motion is untimely and should be stricken or denied. In response, Becker moves to extend its time to serve its motion for reargument. The Court grants this motion.

   Rule 3(j) of the Civil Rules of the Southern District of New York requires that a motion for reargument be served within ten days of the docketing of the underlying decision. The

*Inc.,* 591 F.Supp. 270 (S.D.N.Y.1984) (the "Opinion").

Becker now moves for reargument of the Opinion with respect to the denial of Becker's motion to dismiss the plaintiffs' claims under section 12(2) of the Securities Act of 1933 (the "Securities Act") for lack of privity between the plaintiffs and Becker.[4] In the alternative, Becker moves for an order pursuant to 28 U.S.C. § 1292(b) certifying the Court's order for interlocutory appeal.

Becker argues that the Court failed to consider the unique statutory status of an underwriter with respect to its liability under section 12(2).[5] Becker argues that this section unambiguously requires privity between the buyer and the seller. Although it acknowledges that the courts have sidestepped the privity requirement by utilizing such theories as participation, aiding and abetting, and conspiracy, Becker contends that such theories are not applicable to an underwriter because of the statutory limitations that Congress articulated in sections 11 and 12.

Section 12(2) provides that

Court's Opinion was filed on June 29, 1984. Becker's motion for reargument was filed on July 10, 1984, one day late. The ten days between June 29, 1984, and July 9, 1984, included two weekends and the Fourth of July. Under the circumstances, the motion to extend is granted.

5. Becker states that the "Court appears to have held that a managing underwriter, solely by performing the duties typical of managing underwriters, may be held liable in damages for the proceeds of the entire public offering of securities sold to the public, regardless of the particular number of shares underwritten and sold by him." Defendant Becker's Memorandum of Law in Support of Its Motion for Reargument at 3. Becker further states that this holding "is of great importance to the entire investment banking community, as it threatens to vastly expand the financial exposure of a managing underwriter in a public offering." *Id.*

   The Opinion may appear broader than it was meant to be because the Court was considering the liability of various defendants (officers, directors, and underwriters) together under section 12(2). Therefore, although the Court did consider and evaluate everything presented to it earlier, we now clarify the Opinion with respect to the liability of underwriters.

[a]ny person who ... offers or sells a security ... by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading, ... shall be liable to the person purchasing such security from him....

15 U.S.C. § 77*l* (1982).

Section 11 provides that

[i]n case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security ... may ... sue ... every underwriter with respect to such security.

15 U.S.C. § 77k(a) (1982). In 1934, Congress amended section 11, adopting section 11(e), to provide that

[i]n no event shall any underwriter (unless such underwriter shall have knowingly received from the issuer for acting as an underwriter some benefit, directly or indirectly, in which all other underwriters similarly situated did not share in proportion to their respective interests in the underwriting) be liable in any suit ... for damages in excess of the total price at which the securities underwritten by him and distributed to the public were offered to the public.

15 U.S.C. § 77k(e) (1982). *See* 78 Cong. Rec. 8709 (1934) (statement of Rep. Rayburn) ("There has been a question ever since the adoption of the Securities Act of 1933 with reference to the underwriter. We make it clear in these amendments that hereafter under no circumstances shall an underwriter be held responsible for any more of the issue than he himself personally underwrites.").

Becker argues that section 12 must be read in conjunction with section 11. Such a reading, contends Becker, demonstrates Congress' intent to limit the liability of an underwriter to what that underwriter underwrote and sold as illustrated by the privity requirement of section 12 and the specific damage limitations for underwriters in section 11. Thus, argues Becker, Congress precluded judicial imposition of unlimited liability on underwriters which the Court's Opinion has expanded.

The plaintiffs agree that the two sections are to be read together. They argue, however, that Congress never intended to limit the liability of a managing underwriter, like Becker, as indicated by the parenthetical provision in section 11(e) which provides that an underwriter's liability is not limited if the underwriter received preferential treatment from the issuer. They contend that lead underwriters now evade the effect of section 11(e) by receiving their management fee from members of the underwriting syndicate rather than from the issuer.

Taking into consideration everything that has been presented to it, the Court now clarifies its Opinion with respect to the liability of Becker under section 12(2).

■ As we held before, plaintiffs can sue not only their immediate sellers under section 12(2) but also those who substantially participated in the transaction. *See Klein v. Computer Devices, Inc., supra,* 591 F.Supp. 270 and authorities cited therein. Participation can include active participation in the transaction or aiding and abetting or conspiring with the seller. *Id.*

■ The Court agrees that sections 11 and 12 should be read together when construing the liability of an underwriter, such as Becker, under section 12(2). For this reason, an underwriter who is alleged to have violated section 12(2) merely by performing the functions of a typical lead underwriter cannot be liable as a participator under section 12(2), unless the plaintiff bought its stock from that underwriter. It is possible, however, that an underwriter can be liable as a participator if the underwriter participates in the sales transaction to a greater degree. Moreover, an underwriter, whether the lead underwriter or

just a member of the syndicate, who aids and abets or conspires in the preparation of a false prospectus to be used in selling securities to purchasers, can be liable under section 12(2). *Cf. Akerman v. Oryx Communications, Inc.,* [Current] Fed.Sec. L.Rep. ¶ 91,680 (S.D.N.Y.1984) (The defendant-underwriters' motion for summary judgment dismissing the complaint for lack of privity under section 12(2) was granted. The court found that the plaintiffs were unable to proffer any evidence that the underwriters of the issuance of stock aided, abetted, or conspired in transactions effected by the immediate sellers of stock.); *Competitive Associates, Inc. v. International Health Sciences, Inc.,* [1975] Fed. Sec.L.Rep. ¶ 94,966 (S.D.N.Y.1975) (After a trial on the merits, the court found that a conspiracy existed and that its objective was to make the underwriting and public offering of the issuer a success beyond its normal expectations. The court further found that there was no evidence that the lead underwriter was a party to the conspiracy or should have known of it and that the underwriter was not liable under section 12(2).). This will require proof of some sort of scienter. *See Lanza v. Drexel &*

*Co.,* 479 F.2d 1277, 1298 (2d Cir.1973) (*en banc*) ("[S]ection [12(2)] requires privity or, in the absence of privity, scienter.") (footnotes omitted); *In re Caesars Palace Securities Litigation,* 360 F.Supp. 366, 383 (S.D.N.Y.1973).[6] *See also* L. Loss, *Fundamentals of Securities Regulation* 1184–1185 (1983).[7] Requiring proof of scienter brings these theories of liability under section 12(2) close to liability under section 10(b) of the Securities Exchange Act of 1934 wherein the liability of an underwriter is not limited. *See Frankel v. Wyllie & Thornhill, Inc.,* 537 F.Supp. 730, 744 (W.D. Va.1982).[8]

Next the Court must decide whether the complaints adequately allege causes of action against Becker under the exceptions to the privity requirement as clarified above.

■ The *Klein* complaint alleges that Becker participated in the sales transactions and aided and abetted or conspired with the other defendants to make or cause the misstatements and omissions in the prospectus. This complaint fails to adequately state a section 12(2) claim against Becker under the various exceptions to the privity requirement.

---

**6.** Persons participating directly in a violation of [section 12] will not escape liability under the express language of the Act; similarly, those persons who are aware of and, to some lesser degree, participate in a violation of the securities laws and either enter into an agreement with or give assistance to the primary wrongdoers should not be permitted to escape the imposition of liability. As one commentator has pointed out, "[s]uch individuals will be subject to liability because they have acted knowingly or recklessly" to assist in such conduct or to be a part of a proscribed course of action.
*In re Caesars Palace Securities Litigation,* 360 F.Supp. 366, 383 (S.D.N.Y.1973) (footnote omitted).

**7.** [T]here [is] a distinction under § 12 between the liability of the seller proper and the liability of other persons, in that the seller proper would have the burden under the statute of proving his innocence but that the plaintiff obviously would have the burden of proving that the other persons had participated in an unlawful sale, a burden that (at least under § 12(2) as distinguished from § 12(1)) would almost inevitably involve proof by the plaintiff of some sort of scienter on their part.

L. Loss, *Fundamentals of Securities Regulation* 1184–85 (1983) (footnotes omitted).

**8.** Plaintiffs ... have actually alleged ... that the [defendants] aided and abetted the § 12(2) violations.... This theory of liability is an accepted one, the elements of which apparently are the same as those of aiding and abetting under Rule 10b–5. What is required is that "the aider and abettor be aware of the violation or act recklessly in that regard and give assistance to the primary wrongdoers. It is the participation with the knowledge that a fraud is being committed that leads to liability." *Stern v. American Bankshares Corp.,* 429 F.Supp. 818, 824 (E.D.Wis.1977). *See also Pharo v. Smith,* 621 F.2d 656 (5th Cir.1980); *Securities & Exchange Commission v. Murphy,* 626 F.2d 633 (9th Cir.1980); *In re Itel Securities Litigation,* 89 F.R.D. 104 (N.D.Cal.1981); *Sandusky Land, Ltd. v. Uniplan Groups, Inc.,* 400 F.Supp. 440 (N.D.Ohio 1975); *In re Caesars Palace Securities Litigation,* 360 F.Supp. 366 (S.D.N.Y.1973).
*Frankel v. Wyllie & Thornhill, Inc.,* 537 F.Supp. 730, 744 (W.D.Va.1982).

■ The substantial participation exception is not met because the allegations relating to Becker's participation in the sales transactions only allege the activities of the typical lead underwriter. The plaintiff alleges that

> Becker actively promoted the sale of shares to plaintiffs and all other members of the class through: a) its orchestration of the entire transaction, b) its placement of advertisements, c) its negotiation of compensation on behalf of the other underwriters, d) its processing of purchase orders received from members of the public by all other underwriters, e) its participation in preparing the Prospectus, and f) its administrative services to all other participating underwriters.

*Klein* Complaint ¶ 20. These allegations merely expand upon the definition of a managing underwriter contained in the regulations of the Securities and Exchange Commission. That regulation defines a managing underwriter as

> an underwriter ... who, by contract or otherwise, deals with the registrant; organizes the selling effort; receives some benefit directly or indirectly in which all other underwriters similarly situated do not share in proportion to their respective interests in the underwriting; or represents any other underwriters in such matters as maintaining the records of the distribution, arranging the allotments of securities offered or arranging for appropriate stabilization activities, if any.

17 C.F.R. § 240.12b–2 (1984). Without more, Becker cannot be liable as a substantial participator.

■ The aiding and abetting and conspiracy exceptions are not met because the allegations are inexplicit and because scienter is not sufficiently set forth. The plaintiff alleges that "[e]ach of the defendants herein participated in or aided and abetted each other or conspired with some or all of the defendants to make the misstatements or cause the omissions set forth above." *Klein* Complaint ¶ 25. The inadequacies of this allegation can be seen when compared with the section 10(b) claim in the same complaint:

> Becker, through its participation in the preparation and review of the Prospectus, conspired with or aided and abetted Computer Devices in making the untrue statements and omissions of material facts alleged in paragraph 9 with knowledge of the misstatements and omissions or in reckless disregard for the truth of such statements and the existence of such omissions.

*Klein* Complaint ¶ 31. Although the complaint repeats and realleges prior allegations, the allegations in the adequately pled section 10(b) claim cannot cure the deficiencies of the section 12(2) claim. The section 10(b) claim is alleged after the section 12 claim and, therefore, is not read into the section 12(2) claim. Therefore, the section 12(2) claim in the *Klein* complaint must be dismissed.

■ The *Davella* complaint alleges that Becker substantially participated in the sales transactions by performing the duties of the lead underwriter and by aiding and participating in the preparation of the false prospectus.[9] This complaint, too, fails to adequately state a section 12(2) claim against Becker.

---

9. In the *Davella* complaint, the plaintiff alleges that

Defendant Becker played an active and substantial role in promoting the sale of Computer Devices common stock issued on the public offering to plaintiff and other members of the Class by: (i) acting as lead underwriter and as representative of the other underwriters in connection with the public offering; (ii) aiding and participating in the preparation of the Prospectus; (iii) negotiating underwriting agreements on behalf of the other underwriters; (iv) placing advertisements promoting the public offering; and (v) endorsing the public offering expressly and impliedly by permitting its name to be used in connection with the public offering.

Defendant Becker by its actions provided substantial assistance to the underwriting group in the sales of shares of Computer Devices common stock issued on the public offering to plaintiff and other members of the Class.

*Davella* Complaint ¶¶ 54, 55.

This complaint merges the substantial participation exception and the aiding and abetting exception. While it is true that an aider and abettor is a participator in the transaction, such a theory is inadequate here because of the failure to allege scienter on the part of Becker. Therefore, the section 12(2) claim in the *Davella* complaint must also be dismissed.

In conclusion, Becker's motion for reargument is granted. Upon reargument, the Court dismisses the section 12(2) claims in both complaints for the reasons stated above.[10] The section 12(2) claim in the *Klein* complaint is dismissed with prejudice. The *Klein* plaintiffs had stipulated that the second amended complaint would be their final complaint. Moreover, the section 10(b) claim therein is substantially similar to their section 12(2) claim. The dismissal of the section 12(2) claim in the *Davella* complaint is with leave to replead. (There is no section 10(b) claim in this complaint.) The *Davella* plaintiff has twenty (20) days from the date of this decision to amend the complaint. Becker's motion for certification is denied.

SO ORDERED.

---

**10.** The Court notes that the section 11 claims of the plaintiffs still remain and that ultimately the plaintiffs would have had to make a choice between their section 11 and section 12 claims. *See In re Itel Securities Litigation,* 89 F.R.D. 104, 115 (N.D.Cal.1981); *In re the Gap Stores Securities Litigation,* 79 F.R.D. 283, 307 (N.D.Cal.1978); III L. Loss, *Securities Regulation* 1700 n. 46 (2d ed. 1960).

As is usually done by a purchaser of securities allegedly defrauded by the selling prospectus, the plaintiffs alleged both section 11 and section 12(2) claims. Ultimately, however, a choice between the two must be made because the remedies of section 11 and section 12 are not cumulative. *Id.* "The purchaser of a registered security, whether from the issuer directly or from an underwriter or dealer, presumably cannot rescind the transaction under § 12(2) and at the same time retain his status as a security holder in order to sue for damages under § 11." III L. Loss, *supra,* at 1700 n. 46.